I appreciate your enthusiasm. Thank you, Chief Judge Frackler. And may it please the court, my name is Stephen Goldblatt. I'm a professor of law at Georgetown University Law Center and I was assigned by the court to represent Mr. Mohamed in this petition for review. The first issue I would like to raise this morning is whether or not Mr. Mohamed is removable. That turns on the question of whether or not his conviction under Virginia state law for a misdemeanor failure to And I would ask the court to conclude that it is not, and join the Third and the Tenth Circuits, both of which have reviewed this issue before this court has, and concluded that even with Chevron deference, this is an unreasonable interpretation of what is a crime involving moral turpitude. And if the court so holds that Mr. Mohamed is not removable. I start with the definition of a crime involving moral turpitude, which is the is the BIA's definition of it, not asking the court to take, but they have defined it as inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society. We also know that we're using the categorical approach, which means in order for this crime to be a crime involving moral turpitude, it must necessarily meet the BIA's own definition. It is a regulatory offense, it is prophylactic in its form, and it is very easy to come up with any number of situations where it simply is not a crime involving moral turpitude. What the BIA essentially did in its reasoning that was rejected by the two circuits that looked at it, essentially equated the failure to register with the underlying crimes that are involved, which are sexual offenses. It's just not a sexual offense. There's a registration, it's not even in the criminal code in Virginia. And these laws are all over the country, they're required by SORNA, and in both instances, in both the Third and the Tenth Circuit, they both had a knowing component, which this one does as well. But that doesn't mean that you don't need that argument, whether it's knowing or not, because even a traffic violation can be done knowing, or any kind of regulation, going on a one-way street or making a legal U-turn, you're doing it deliberately. It doesn't make it a crime of moral turpitude. That's correct. It seems to me if you take away the norm, the law itself, and see whether the underlying conduct would violate a moral value, then you have a crime involving moral turpitude. That's correct. And in this case, if you took away the statute, the idea that you have to register is not a moral norm. That's correct. But I don't think it turns on whether the registration is deliberate or not. It seems to me that your argument has to be that the conduct itself is registration, which is an administrative function and doesn't involve morality. That's correct, Judge. And the only thing to add to it, and then basically I'm going to stop, it has to necessarily be a crime involving moral turpitude. It's not enough to just come up with a situation where that might work. That's not enough, and that the Supreme Court has made clear. This Prudencio, I mean that's settled law at this point. It's not a crime involving moral turpitude. And when you realize the consequences, he's been in detention for three years on this basis. Well, if it were a crime of moral turpitude, yeah, I understand what you're saying is that because your view, because it's not a moral turpitude, he's unjustly detained, but obviously if the BIA follows its own rulings, he's there legally until we say otherwise, I guess. To be sure, my only point is that the way that the analysis that they used in Tovar Lobo in evaluating whether it's reasonable, it's just not reasonable. And I'm going to stop now because both the Tenth and the Third Circuits have laid it out. We've laid it out in our brief. I don't think I can add anything to it at this point. It's just a very strong argument. This is unreasonable law, and it would then get me, assuming we lose on that issue, that you then have to look at his sexual battery conviction. And the question the court is, if you win on that though, we're done. The case is over. But if for some reason we lose on that issue, the other issue that we were asked to brief is the question of whether or not sexual battery in Virginia was properly analyzed by the BIA as a modified, under the modified categorical approach. We think it is absolutely clear under Royal, and if you could look at the statutory instructions that are used in Virginia, this isn't a divisible offense. It is a, it offenses, it's a touching that takes place by force, threat, intimidation, or ruse. They are separated by commas. We know that under Royal, we know that under De Camp, you have to look and see whether they're separate elements or their means. And what's the most benign offense that you think is not a moral turpitude? It seems to me, even if you trick someone into a situation that's called sexual abuse, that violates a moral norm no matter whether it's a statute or not, doesn't it? That's quite correct, but that's crime involving moral turpitude. Now we're talking about aggravated felonies and crimes of violence. We're into crime of violence now, but we conceded that he has that one. It is a CIT. But on this, it is just not a crime of violence by any definition. And what you look for, and you have it in the in the registration crime, what you're looking for for separate elements, you're looking for brackets and semicolons. That is the way, when you look at jury instructions, you can see where there's a choice to be made. There are no brackets or semicolons here. It's force, intimidation. This is one of those areas that gets more confusing year after year. As the cases come out, what's divisible and what's not divisible, what's a separate crime, what are elements, what are means, seems to me it's a little bit like the way you look at it. I'm not going to argue with you about that. This is a personal observation. Yes. It's not a legal one. But it's one of those things where the Supreme Court has come down and said, this is what you do, so we do it. But I think in this case, actually, despite all the problems that there are, this isn't one of them. This, to me, is not a divisible offense. The ruse element was added, I think, in 1997. And it's just commas between four, it's disjunctive, four ways that a crime can be committed. That, to me, is the least persuasive way to argue that. The most persuasive way is whether a jury has to agree on the means. If the jury can pick any one of the means, and they can be disparate members of the jury coming to a verdict, then it's a single crime. But the commas don't help much, because all you have to do is put in separate sections. And all of a sudden you're saying because it doesn't have a, b, c, d, rather it has commas, it's not separate crimes. So I don't think the structure itself is as persuasive as the notion as to how the State treats it. And when you go to the jury, apparently, in Virginia, a jury could could convict on this crime by any one of those words, couldn't they? But the way we're drawing that is from the jury. In other words, I think we're both, in a sense, we're both saying the same thing. No, but that's your better argument than the commas business. In other words, and again, perhaps this is going back to, this is what basically DeCamp tells us to do, is look at this provision in the statute and decide whether or not it is four different means to do the same thing, or four separate elements to be elected. No election was made here. If you look at what amounts to the judgment of conviction here, it's, he's convicted of doing it by any one of the four means, and so, which is consistent with the view that it was never divided, it's not divisible. If you get to this issue, we win on that one as well. But that would be cancellation. Removal, that would require remand. If he is not removable, that should be vacated and then he can be released. And unless there are further questions. Okay, thank you. Let's hear from Mr. Joseph. Good morning, your honors. May it please the court, Bernard Joseph on behalf of the Attorney General. I'd like to apologize in advance. My allergies have been bothering me and I woke up and I have less than my full voice. There are two issues in this case. The first issue is whether the petitioner's removable is charged for failing to register as a sex offender, which would be a second crime involving moral turpitude, not arising out of the same scheme of criminal law. If you want to get some water, we'll take it up there with you. Well, I have allergies too, so I sympathize with your struggle. Again, the petitioner concedes that the sexual battery is a crime involving moral turpitude. Therefore, the issue is whether or not failure to register as a sex offender is a crime against moral turpitude. The government contends that this court, giving the board's precedential decision in matter of tobar lobo, the Chevron deference that should be accorded should disagree with the third and the tenth and find that... file a report, file a tax return. These all can be done deliberately and cause violations of law, which in and of itself may be moral, but I think you don't look at the crime that makes it. You have to ask the crime whether the crime involves moral turpitude. So you set aside the prohibition of the crime and see whether there's any moral component in failing to register. And I just have very... it's very difficult for me to figure that that isn't anything more than an administrative function to assist in enforcing the sex laws and following people who have passed violations. But the registration requirement, and that's all that's involved here, what argument can be made that that's a moral norm which can be subject to turpitude, debasement? And the INS just seemed to say because it involves sex, your past conduct was sexual, it's such an offensive conduct in society, it's therefore moral. But that's pretty loosey-goosey, isn't it? I believe that what the board decided was that when you look at the reasons that you need to register as a sex offender to help prevent recidivism and also aid in law enforcement based on... the offensiveness of sexual conduct in society. You can't find it. I don't want to take up your time. I'll find it. Your Honor, the board here relied on Tobar-Lobar and pointed out that there are no Fourth Circuit cases that are to the contrary. And again, the board's reasoning was that because of the underlying offense, the failure to register is a violation. It does violate society, morals and duties. The failure to register does? The failure to register would violate that. What moral norm is there to register if there's no statute that says you have to? Is there an aspect of morality, a moral norm that society has recognized in registration? I would say that there is a norm to put people on alert if there are dangerous people. The statute imposes registration, nothing more. The registration would put society on alert that, one, there is a sex offender out there, and two, it would also aid in the law enforcement and the prevention of recidivism. If the court finds that the failure to register as a sex offender is not a crime involving moral turpitude, then the petitioner is no longer removable and the case should be remanded to the board for proceedings consistent with that opinion. Do you agree with the petitioner that if we were to conclude that it doesn't involve moral turpitude, then that ends, we don't have to go further? Correct. There's nothing else left in the case. If there aren't two CIMTs, the petitioner is not removable, it's remanded to the board, and the board, consistent with this opinion, doesn't have a basis for removability and would terminate the proceedings. However, should the court decide that it is a crime involving moral turpitude, the government contends that, at this point, the case should be remanded back to the board for the board to determine, based on its new decision in Matter of Charest and the intervening decision in Royal, whether or not it actually is an aggravated felony. It's important at this point to recognize that Matter of Charest, unlike the board decision in our case, dealt with procedures to determine how to determine whether or not a violation of a state law is an aggravated felony. And so at this juncture, it's important, I think, to let the board, in the first instance, look at this crime and determine whether or not it is an aggravated felony. If the board decides that it is not, the case would have to be remanded in any event to go forward on relief to determine whether or not the petitioner can satisfy the other requirements necessary for cancellation of removal. The board didn't decide this issue, did they? The issue of means and jury unanimity? It did not. We have a generic problem that instead of us deciding that, we'd have to send it back. Correct. So at this point, the government's position is if the court finds that failure to register as a sex offender was the second CMIT, which renders the petitioner removable, that the case should be remanded back to the board for the board to determine in the first instance whether under this court's decision in Royal or under the board's decision in Matter of Charest, which DHS is petitioning for re-hearing en banc with the board, decide whether this is an aggravated felony. So at this point, I think it's premature for the court to rule on it because the board, in our case, did not make any findings concerning whether it's an aggravated felony in light of the new decisions. Thank you. If there are no further questions? Okay. Thank you, Mr. Joseph. Thank you. Thank you all. Very quickly, there's no Chenery issue here. The board found that it was a divisible crime. The IJ found it was a divisible crime. It's the only way it could find that it was an aggravated felony to begin with because it had to get Ruse out of it. Ruse stays in it. It's not an aggravated felony using a categorical approach. So the issue has been decided. They changed the way they look at it, but we're not talking about it. So you suggest that there's enough there that if we rule against you on the first issue, then we have to reach the second issue? I think you have to reach the legal issue. If you agree with us, then you'd have to remand it back for the discretionary part of cancellation of removal. But the question, whether it's a divisible offense or not, is you don't defer on that anyway. No, but if they had not decided or expressed it, then we'd have to let them do it the first time. That's correct. They decided it. What they're saying now is we changed the way we decide these things. And in fairness, DeCampo was decided while it was pending and Royal came out afterwards. But they unquestionably had to reach the divisibility question in order to decide it. The only other thing I would say, and I don't do this normally, let me just say it. On the first issue, I don't think there is a plausible basis for upholding Tobar-Lobo. I haven't heard anything today from the government. It's the same reasoning that's in Tobar-Lobo. No court has accepted that. He's been in custody for three years. If there's any possibility, if the court agrees, if there's any way to issue an order as soon as possible vacating the final order of removal so we can try and get him released, there's a habeas petition pending. We're not representing him, but there is one pending in Virginia Federal Court as well. But this has really been three years, and this is what's holding him in. And if there's any way to issue an order with an opinion to follow, we would ask that that be done. If there are no other questions, thank you. Thank you, Mr. Goldblock. We appreciate very much your undertaking representation, Mr. Kline. I guess it's too early in the school year for you to have given this to a student. I've gotten too old to take a student this early in the school year and get them ready for argument. It was enough to get me ready for argument. So we appreciate your taking the responsibility on yourself. Thank you very much. Thank you. Okay, we'll come back and greet counsel and go into our next case. Thank you.
judges: William B. Traxler Jr., Paul V. Niemeyer, Andre M. Davis